**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Jeremy Jones,<br><br>    Petitioner,<br><br>v.<br><br>Warden J. Fikes,<br><br>    Respondent. | Case No. 20-cv-1341 (SRN/HB)<br><br><br>**ORDER AND**<br>**REPORT AND RECOMMENDATION** |

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Petitioner Jeremy Jones' Petition for a Writ of

Habeas Corpus under 28 U.S.C. § 2241 [ECF No. 1] and Motion for Preliminary

Injunction and to Amend Petition [ECF No. 8].  Respondent Warden J. Fikes opposes the

petition and motion [ECF No. 17].  The case has been referred to the undersigned for the

issuance of a report and recommendation, pursuant to 28 U.S.C. § 636 and D. Minn. LR

72.1.  For the reasons set forth below, the Court recommends that the petition be denied

in part and held in abeyance in part, and that the motion be denied.  The Court further

orders Respondent to file a supplemental response to the petition.

I.    **Background**

Jones is presently incarcerated at the Federal Correctional Institution in Sandstone,

Minnesota (FCI-Sandstone), serving an aggregated 102-month sentence imposed in

January 2019.  (Pet. at 1; Kensy Decl. ¶ 30 [Doc. No. 19] & Ex. E at 2–3 [Doc. No. 19-

5].)[1] Jones has a projected release date of October 12, 2024, via good conduct time credit. (Kensy Decl. Ex. E at 4.)

Jones filed the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 on June 10, 2020. He alleges in the petition that he (1) was arbitrarily denied placement in a residential drug abuse program (RDAP); (2) received an erroneous custody classification without notification, in violation of due process; (3) was denied placement in a residential reentry center (RRC); and (4) was denied release or placement in home confinement under the Coronavirus Aid, Relief, and Economic Security (CARES) Act. (Pet. at 6–8.)

Jones subsequently amended the petition to (1) seek review of his inmate financial responsibility payments (IFRP), which he claims were being calculated incorrectly; and (2) add an Eighth Amendment claim for deliberate indifference to his ankle injury.[2] (Pet'r's Request to Add Claims [ECF No. 6].) Respondent did not oppose the amendments [*see* ECF No. 11], and the Court granted leave to amend, advising the parties it would consider Jones' filings at ECF Nos. 6 and 7 to be supplements to the petition [*see* ECF No. 12]. Jones also expounded on the exhaustion of administrative remedies requirement in ECF No. 6, stating he asked prison staff for the proper forms, but none were provided. (Pet'r's Request to Add Claims at 1.) Thus, he asked the Court to waive the exhaustion requirement.

---

[1] For all docket entries cited herein, the Court cites to the page number assigned by the CM/ECF system.

[2] Respondent did not oppose the request to amend [*see* ECF No. 11], and the Court granted Jones leave to amend, advising the parties it would consider Jones' filings at ECF Nos. 6 and 7 to be supplements to the petition (Order at 1–2 [ECF No. 12].)

Jones filed a second motion to add claims, as well as a motion for injunctive relief. (Pet'r's Mot. Prelim. Inj. [ECF No. 8].)  Specifically, he seeks to elaborate on the deliberate indifference claim about his ankle and to add a deliberate indifference claim arising from what he believes to be a tumor forming on his chest.  (*Id.* at 2–6.)  He also asks for injunctive relief in the form of an immediate transfer to an RRC or home confinement.  (*Id.* at 11.)  Jones repeats his assertion that no administrative remedy request forms have been delivered, despite his requests.  (*Id.* at 1.)  Finally, Jones asks for permission to further amend his petition when he has access to a law library and for different prison officials to review his claims.  (*Id.* at 11.)

Several exhibits Jones had intended to be filed with his petition were returned to him for lack of a case number.  (Ntc. Proof Claims at 1–2 [ECF No. 10].)  Jones returned the exhibits to the Court, and they were docketed at ECF No. 10.  One of the exhibits is a Request to Staff Form dated May 8, 2020, on which Jones had written "Send me 3 BP-8s" and "Copy (BP-8) Administrative Remedy."  (Ntc. Proof Claims at 2 [ECF No. 10-4].)

Shortly thereafter, the Court ordered Respondent to file a response to the second motion to amend and to respond substantively to the proposed new claims and requests for relief.  (Order at 2–3 [ECF No. 12].)  Respondent filed a response on August 14, 2020, in which Respondent asks the Court to dismiss the petition for lack of exhaustion and on the merits.  [*See* ECF No. 17.]  Jones filed a reply memorandum and supporting exhibits on August 24, 2020.  [ECF Nos. 24–26.]  In a contemporaneous filing, Jones also asked the Court to dismiss the second ground for relief raised in his original petition: that

3

he received an erroneous custody classification without notification in violation of due

process.  [ECF No. 28.]  The Court will consider that claim voluntarily dismissed.

## II.    Discussion

"The writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in

custody in violation of the Constitution or laws or treaties of the United States."  28

U.S.C. § 2241(c)(3).  A prisoner may challenge the execution of his sentence through a

§ 2241 petition filed in the district where he is incarcerated.  *Matheny v. Morrison*, 307

F.3d 709, 711 (8th Cir. 2002)).  A federal court has jurisdiction to adjudicate a § 2241

petition when two requirements are met: (1) the petitioner is "in custody," and (2) the

custody violates "the Constitution or laws or treaties of the United States."  *Maleng v.

Cook*, 490 U.S. 488, 490 (1989); *see* 28 U.S.C. § 2241(c)(3).

### A.    RDAP Placement

Jones contends he was arbitrarily denied placement in an RDAP.  (Pet. at 7; Pet'r's

Br. Supp. Pet. at 4 [ECF No. 4].)  He asks the Court to either award him a year of credit

or order the Bureau of Prisons (BOP) to allow him to participate in the program.  (Pet'r's

Br. Supp. Pet. at 11.)  Jones asserts that further "efforts to administratively resolve this

issue" would be futile.  (Pet'r's Br. Supp. Pet. at 4.)  Respondent asks the Court to

dismiss this claim as unexhausted and for lack of jurisdiction.  (Resp't's Resp. at 20, 25.)

The BOP must provide appropriate substance abuse treatment to eligible federal

prisoners.  18 U.S.C. § 3621(b) ("The Bureau shall make available appropriate substance

abuse treatment for each prisoner the Bureau determines has a treatable condition of

substance addiction or abuse.").  The BOP has the discretion to determine eligibility for

4

the program.  *See* 18 U.S.C. § 3621(e)(5)(B).  Generally, the BOP offers RDAP to

inmates who apply or are referred by a staff member and have a "verifiable substance

abuse disorder."  28 C.F.R. § 550.53(b)–(d).

Jones was considered for RDAP placement, but the Drug Treatment Specialists

(DTS) team determined he did not have a verifiable pattern of substance abuse or

dependence in the year preceding his arrest.  (Lorenzen Decl. ¶ 7 [ECF No. 20] & Ex. B

[ECF No. 21].)  Jones disputed the finding and requested an RDAP interview.  (Lorenzen

Decl. ¶ 10 & Ex. B at 2, 12–18.)  A drug abuse program coordinator informed Jones that

his records did not warrant a diagnostic interview, and Jones disputed the accuracy of the

records.  (Lorenzen Decl. ¶ 8.)  The coordinator informed Jones he could provide

additional documentation.  (Lorenzen Decl. ¶ 8.)  Jones later submitted a statement, a

DUI record, and medical records indicating he was prescribed opioids.  (Lorenzen Decl.

¶ 10.)  The coordinator reviewed the records and determined they did not warrant a

diagnostic interview.  (Lorenzen Decl. ¶ 11.)  Jones did not submit any additional

documentation, nor did he sign a consent form authorizing staff to verify his alleged

substance abuse disorder.  (Lorenzen Decl. ¶¶ 12.)  According to BOP Paralegal

Specialist Shannon Boldt, "Jones has attempted to file zero administrative remedies

during his incarceration with the Bureau of Prisons."  (Boldt Decl. ¶ 13 [ECF No. 18].)

An Administrative Remedy Generalized Retrieval report indicates that no remedy data

exists for Jones.  (Boldt Decl. Ex. B [ECF No. 18-2 at 2].)

### 1.    Exhaustion

A prisoner must generally exhaust his administrative remedies before seeking

§ 2241 relief. *See United States v. Chappel*, 208 F.3d 1069, 1069 (8th Cir. 2009).

Exhaustion serves several important goals:

> (1) the development of the necessary factual background upon which the claim is based; (2) the exercise of administrative expertise and discretionary authority often necessary for the resolution of the dispute;[] (3) the autonomy of the prison administration;[] and (4) judicial efficiency from the settlement of disputes at the prison level.

*Mason v. Ciccone*, 531 F.2d 867, 870 (8th Cir. 1976). When exhaustion would be futile, the failure to exhaust may be excused. *See Elwood v. Jeter*, 386 F.3d 842, 844 n. 1 (8th Cir.2004). A court may opt to address the merits of an unexhausted habeas claim, because the exhaustion requirement is judicially created, not jurisdictional. *Lueth v. Beach*, 498 F.3d 795, 797 n.3 (8th Cir. 2007).

Jones argues that exhaustion of his RDAP claim would be futile because the BOP has already determined the outcome of the claim, generally because of the COVID-19 pandemic and civil unrest, and also because prison officials have refused to provide him the necessary forms. (Pet'r's Br. Supp. Pet. at 4; Pet'r's Request to Add Claims at 1; Pet'r's Mot. Prelim. Inj. at 1.) The Court respectfully disagrees that exhaustion would be futile on the first two grounds. With respect to Jones' belief that the outcome has already been determined, Jones had the opportunity to submit additional documents to verify a substance abuse disorder or to consent to staff obtaining such documentation, but he did not do so. One of the fundamental purposes of the exhaustion requirement is to develop the necessary factual background on which a claim is based. If Jones had pursued an administrative remedy, facts relevant to his alleged substance abuse disorder would have come to light. A second fundamental purpose—so that BOP officials may exercise their

administrative expertise—would also be well-served by requiring exhaustion of the

RDAP claim, given the expertise of the BOP in determining RDAP eligibility.  The

autonomy of prison administration and judicial efficiency further favor exhaustion of this

claim.

With respect to Jones' claim that exhaustion would be futile because of the

COVID-19 pandemic and civil unrest, Jones has not explained precisely how these

circumstances render exhaustion futile.  Nor has he shown that he is different from any

other prisoner in this respect.

Jones' third reason why the Court should excuse his failure to exhaust

administrative remedies is more compelling.  As support for this assertion, Jones relies on

a Request to Staff Form dated May 8, 2020, on which he wrote "Send me 3 BP-8s" and

"Copy (BP-8) Administrative Remedy."  (Ntc. Proof Claims [ECF No. 10-4 at 2].)  BP-8

forms are used by inmates to request informal resolution with staff, and are the first step

of the BOP's four-step administrative remedy program.  28 C.F.R. § 542.13; (Boldt Decl.

¶¶ 6–7).  Respondent did not respond directly to Jones' assertion that his request for BP-8

informal resolution request forms went unanswered, but Boldt averred generally that

requests for BP-8 forms "are not assigned a Remedy ID number and are not tracked."

(Boldt. Decl. ¶ 7.)  Respondent did not provide a copy of a Request to Staff Form on

which a staff member responded to Jones' request or indicated that the BP-8 forms had

been provided.  Nor has Respondent otherwise shown or averred that BP-8 forms were

ever provided to Jones in response to his request.

The Court is not inclined to recommend dismissal for failure to exhaust if, in fact,

the necessary administrative remedy request forms were not provided to Jones upon his

request. *See Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir. 2001) (in prisoner § 1983

action, finding that the prison's failure to respond to an informal resolution request

resulted in exhaustion because no further administrative remedies were "available");

*McKeighan v. Corr. Corp. of Am.*, No. 08-3173-SAC, 2010 WL 446503, at *5 (D. Kan.

Feb. 4, 2010) (in same context, finding "administrative remedies are not 'available' and

exhaustion may be excused when prison officials have refused to provide prisoners with

requisite forms"). It is Respondent's burden to establish lack of exhaustion. *See Elliott v.

Paul*, No. 18-cv-403 (NEB/KMM), 2018 WL 6729658, at *8 (D. Minn. Nov. 14, 2018),

*R. & R. adopted*, 2018 WL 6727064 (D. Minn. Dec. 20, 2018); *Webb v. Beasley*, No.

2:17-cv-027 (KGB/PSH), 2018 WL 894640, at *1 (E.D. Ark. Feb. 14, 2018). Here,

Jones has asserted and provided documentation that he asked for the necessary informal

resolution forms to commence the administrative remedy process and that the forms were

not provided. Respondent did not specifically address or rebut Jones' assertion or

documentation. By Respondent's admission, the BOP does not track requests for

informal resolution. Unfortunately, in this case, the BOP's failure to track or otherwise

keep a record of Jones' request for the informal resolution request forms has precluded its

ability to show that Jones' failure to exhaust administrative remedies was not the fault of

the prison. In light of this, the Court recommends that the exhaustion requirement be

waived.

### 2.      Subject Matter Jurisdiction

Jones does not argue that the decision to deny him an RDAP interview violated the

Constitution or established federal law, or exceeded the BOP's statutory authority. *See*

*Ambrose v. Jett*, No. 13-cv-2343 (PJS/JSM), 2013 WL 6058989, at *7 (D. Minn. Nov.

15, 2013). Rather, he argues the decision was "arbitrary[,] capricious[,] and a[n] abuse of

discretion" (Pet'r's Br. Supp. Pet. at 10). This language suggests that Jones is

challenging the BOP's decision under the Administrative Procedure Act (APA). *See* 5

U.S.C. § 706(2)(A) (authorizing a reviewing court to find unlawful and an agency action

that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

law").

But 18 U.S.C. § 3625 provides that § 706 and other APA provisions do not apply

to RDAP decisions made pursuant to § 3621(e). *See Crawford v. Nicklin*, No. 13-cv-

2462 (JRT/SER), 2014 WL 538699, at *7 (D. Minn. Feb. 11, 2014); *Berry v. Marques*,

No. 18-cv-0934 (SRN/TNL), 2018 WL 3750543, at *3 (D. Minn. July 18, 2018), *R. & R.*

*adopted*, 2018 WL 3748179 (Aug. 7, 2018). The Court therefore lacks subject matter

jurisdiction over the RDAP claim. *See Barakat v. Fisher*, No. 13-cv-1296 (JNE/SER),

2013 WL 6058932, at *10 (D. Minn. Nov. 18, 2013). Accordingly, the Court

recommends that the RDAP claim be denied for lack of subject matter jurisdiction.

**B.     RRC Placement**

Jones claims he was denied placement in an RRC. (Pet. at 7.) Jones requested the

transfer to an RRC in light of the COVID-19 pandemic and based on the five factors

enumerated in 18 U.S.C. § 3621(b). (Pet'r's Br. Supp. Pet. at 21.) Jones concedes the

claim is unexhausted but asks the Court to waive the exhaustion requirement for the

reasons discussed in Part II.A.1 *supra*. (Pet'r's Br. Supp. Pet. at 22; Pet'r's Request to

9

Add Claims at 1.)

For the reasons set forth above, the Court recommends that the exhaustion requirement be waived and proceeds to the merits of the RRC claim.  Jones does not argue that the BOP's RRC placement decision was unconstitutional, violated established federal law, or exceeded its statutory authority.  Rather, he argues simply that the denial was not based on the five factors enumerated in § 3621(b).  It is well established "that § 3625 precludes judicial review of the BOP's discretionary decisions under []§ 3621 . . . in the context of RRC . . . placement."  *Khdeer v. Paul*, No. 18-cv-2112 (ECT/BRT), 2018 WL 6919637, at \*4 (D. Minn. Nov. 29, 2018) (citing cases), *R. &. R. adopted*, 2019 WL 79318 (D. Minn. Jan. 2, 2019).  Thus, the Court lacks subject matter jurisdiction to hear the claim.  *Id.*  Accordingly, the Court recommends that the claim be denied for lack of subject matter jurisdiction.

## C.        Placement in Home Confinement Pursuant to the CARES Act

Jones contends he was effectively denied placement in home confinement under the CARES Act because prison staff did not respond to his request.  (Pet. at 8; Pet'r's Mem. Supp. Pet. at 2 [ECF No. 3][3].)  He acknowledges the claim is not exhausted and asks the Court to waive the exhaustion requirement.

Respondent explains that the BOP is prioritizing the consideration of inmates who have served either (1) 50 percent or more of their sentences or (2) 25 percent or more of

---

[3] The Court points out that Petitioner filed both a "memorandum" [ECF No. 3] and a "brief" [ECF No. 4] in support of his petition.  The Court's citations to these documents (Pet'r's Mem. Supp. Pet. [Doc. No. 3]; Pet'r's Br. Supp. Pet. [Doc. No. 4]) is consistent with the names of the documents reflected in the docket entries.

their sentences and have 18 months or less remaining.  (Kensy Decl. ¶ 31.)  As of July

23, 2020, Jones had served only 41.3 percent of his sentence.  (*Id.*)  The BOP will review

Jones for placement in home confinement under the CARES Act when he is closer to his

release date.  (Kensy Decl. ¶ 32.)

"[T]he BOP has exclusive authority to determine the placement of prisoners."

*United States v. Brown*, No. 12-cr-172(3) (SRN), 2020 WL 1922567, at *2 (D. Minn.

Apr. 21, 2020) (citing 18 U.S.C. § 3624(c)(2).)  The CARES Act "merely give[s] eligible

inmates the *possibility* to be considered for home confinement or halfway house

placement."  *Id.* (emphasis added).  Furthermore, "prisoners do not have a constitutional

right to placement in a particular facility or place of confinement," including home

confinement.  *Id.* at *3; *see Meachum v. Fano*, 427 U.S. 215, 224 (1976).

Here, Jones has not alleged that the BOP has violated the Constitution, violated

established federal law, or exceeded its statutory authority.  *Cf. Ambrose*, 2013 WL

6058989, at *7 (noting judicial review is available for claims arising under §§ 3621 or

3624 and asserting "that the BOP's action is contrary to established federal law, violates

the Constitution, or exceeds statutory authority").  The BOP's implementation of the

CARES Act is not subject to judicial review merely because Jones is dissatisfied with the

timing of when he will be considered for home confinement.  Accordingly, the Court

recommends that the CARES Act claim be denied for lack of jurisdiction.

### D.    Calculation of IFRP

Jones claims his IFRP are being calculated incorrectly, which has caused him to be

placed on "Financial Responsibility Refuse Status" and restricted from programming.

(Pet'r's Request to Add Claims at 4–5 [ECF No. 6 ].)  Respondent responds summarily

that IFRP are outside the scope of federal habeas relief.  (Resp't's Resp. at 20.)

The Court respectfully disagrees with Respondent.  Habeas relief extends to the

execution of a sentence, and thus, in limited circumstances, a federal inmate may

"challenge the fashion in which prison officials calculate and impose IFRP, when it can

be shown that those calculations are inconsistent with an express command of the

sentencing judge, by arguing that the prison's actions constitute an improper execution of

that sentence."  *Solomon v. United States*, No. 3:15-CV-1323, 2015 WL 10935743, at *3

(M.D. Pa. Nov. 9, 2015), *R. & R. adopted*, 2016 WL 3001169 (M.D. Pa. May 25, 2016),

*aff'd*, 680 F. App'x 123, 2017 WL 679684 (3d Cir. 2017); *see Matheny v. Morrison*, 307

F.3d 709, 711–12 (8th Cir. 2002) (finding that habeas petitioners' challenges to the IFRP

payment schedule concerned the execution of their sentences and were therefore correctly

brought as § 2241 claims); *Fontanez v. O'Brien*, 807 F.3d 84, 87 (4th Cir. 2015) (holding

"that an inmate's challenge to the BOP's administration of the IFRP is a challenge to the

'execution' of a sentence that is cognizable under 28 U.S.C. § 2241").

Here, Jones has identified language in the judgment entered in his criminal case

that orders him to pay restitution in regular monthly installments in the amount of 10

percent of his gross income: "The defendant pay restitution in regular monthly

installments in the amount of 10% of his gross income . . . ."  (Pet'r's Request to Add

Claims at 3 & Ex. 3 at 2 [Doc. No. 7-2].)  He claims he paid $16.00 on June 8, 2020.

(Pet'r's Request to Add Claims at 3.)  He also claims he is currently paying $100 per

month, contrary to the sentencing court's directive.  (Pet'r's Request to Add Claims at 4

& Ex. 3 at 4 [Doc. No. 7-2].)  In response to Jones' Request to Staff Form dated April 17, 2020, a staff member wrote that Jones' "restitution payment amount is determined the same as your assessment.  Any [percentages] you pay will be done during supervised release."  (Pet'r's Ex. 2 at 6 [ECF No. 7-1].)  The following month, a prison staff member informed Jones that his payment amount had been reviewed in February 2020, and his monthly payments of $100 were "commensurate" with his six-month deposit amount of $2,495.  (Pet'r's Ex. 2 at 4.)

Based on Jones' written submissions and exhibits, there appears to be a discrepancy between the amount of court-ordered restitution and the amount of the monthly IFRP determined by the prison.  Because Respondent did not address the substance of this claim, a supplemental response is necessary.  Accordingly, within fourteen days, Respondent must file a supplemental response that addresses the substance of Jones' IFRP claim.  Respondent must also address whether this particular claim has been exhausted, specifically addressing Jones' assertion and documentation that BP-8 administrative remedy forms were not provided to him when requested.

### E.    Custody Classification Claim

Jones asks the Court to dismiss the second ground for relief raised in his original petition: that he received an erroneous custody classification without notification in violation of due process.  [ECF No. 28.]  The Court therefore recommends that the claim be dismissed without prejudice.

### F.    Deliberate Indifference Claim

In ECF No. 6, which the Court considers a supplement to the petition, Jones

asserts a claim for deliberate indifference to his medical needs based on an ankle injury. (Pet'r's Request to Add Claims at 1.)  This claim challenges the conditions of Jones' confinement, not the validity of his conviction, the length of his detention, or the execution of his sentence.  Thus, a writ of habeas corpus is not the proper remedy.  *See Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996).  Rather, the deliberate indifference claim should be brought in an action pursuant to *Bivens v. Six Unknown Named Federal Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  *See Taylor v. Roal*, No. 10-cv-3588 (PJS/JJG), 2010 WL 4628634, at *4 (D. Minn. Nov. 5, 2010) (citing cases).  Jones has filed a *Bivens* action in this District, *Jones v. Fedo*, Case No. 20-cv-2168, in which he may seek leave to add his deliberate indifference claims.  Because that option is available to Jones, the Court sees no need to recharacterize this action as a *Bivens* action.  *See Spencer v. Haynes*, 774 F.3d 467, 471 (8th Cir. 2014).  The Court therefore recommends that this deliberate indifference claim be dismissed without prejudice.

### G.    Jones' Motion for Preliminary Injunction and to Amend Petition

In Jones' Motion for Preliminary Injunction and to Amend Petition, Jones asks for several forms of relief.  First, he seeks leave to amend his petition to elaborate on the deliberate indifference claim relating to his ankle and to add a deliberate indifference claim arising from what he believes to be a tumor forming on his chest.  As discussed in Part II.F *supra*, deliberate indifference claims are not properly raised through a § 2241 petition.  Jones may seek leave to bring the new and amended deliberate indifference claims in his *Bivens* action.  Consequently, the Court recommends that Jones' request to

14

amend his petition be denied.

Second, Jones seeks leave to further amend his petition when he has access to a law library.  The Court has warned Jones that it would not accept any further submissions on his habeas petition without prior leave, for good cause shown.  (Order at 2 [ECF No. 30].)  Jones has not shown good cause for leave to amend.  He has not shown, for example, that his ability to litigate his habeas petition has been impaired by limited access to the law library.  Nor has Jones submitted the proposed amendments to the Court for its consideration.  Therefore, this request should be denied.

Third, Jones asks for different prison officials to review his claims.  This request should also be denied.  Jones has not articulated a reason for ordering that the decision-making officials should be replaced, nor does the Court believe it has the authority to grant this relief.

Fourth, Jones asks for injunctive relief in the form of an immediate transfer to an RRC or home confinement.  The Court recommends that this request be denied, based on the Court's recommendations that his RDAP, RRC, and CARES Act claims be denied, and his deliberate indifference claim be dismissed.  In other words, Jones has no chance of success on the merits of the claims that underlie his request for injunctive relief.  *See Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981).  Where a litigant cannot succeed on the merits, a court cannot issue injunctive relief.  *Mid-Am. Real Estate Co. v. Iowa Realty Co., Inc.*, 406 F.3d 969, 972 (8th Cir. 2005).

III.    **Recommendation and Order**

Based on the foregoing and all the files, records, and proceedings herein, **IT IS**

15

**HEREBY RECOMMENDED** that:

1. Petitioner Jeremy Jones' Petition for a Writ of Habeas Corpus under 28 U.S.C.

   § 2241 [ECF No. 1] be:

   a. **DENIED** as to the RDAP, RRC, and CARES Act claims;

   b. **DISMISSED WITHOUT PREJUDICE** as to the erroneous custody

      classification and deliberate indifference claims, on the understanding that

      Jones may seek to add those claims to his existing *Bivens* action; and

   c. **HELD IN ABEYANCE** as to the IFRP claim.

2. Petitioner Jeremy Jones' Motion for Preliminary Injunction and to Amend Petition

   [ECF No. 8] be **DENIED**.


   In addition, **IT IS HEREBY ORDERED** that within **fourteen days** Respondent

must file a supplemental response addressing the substance of Jones' IFRP claim and

whether that claim has been exhausted.  In addressing exhaustion, Respondent shall

address Jones' assertion that BP-8 forms were not provided to him upon his written

request.



Dated: November 2, 2020                    *s/ Hildy Bowbeer*
                                           HILDY BOWBEER
                                           United States Magistrate Judge

## NOTICE

The Court's Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under D. Minn. LR 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in LR 72.2(c).