UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jeremy Jones,<br><br>　　　　　Petitioner,<br><br>v.<br><br>Warden J. Fikes,<br><br>　　　　　Respondent. | Case No. 20-cv-1341 (SRN/HB)<br><br>**REPORT AND RECOMMENDATION** |

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Petitioner Jeremy Jones' Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 [ECF No. 1]. In an Order and Report and Recommendation (R&R) dated November 2, 2020, the Court recommended that all but one habeas claim be denied, and ordered that the remaining claim be held in abeyance so that Respondent could address the substance of the claim in a supplemental response to the Petition. (Order & R&R at 1, 16 [ECF No. 34].) The remaining claim is that the Bureau of Prisons (BOP) is incorrectly calculated Jones' inmate financial responsibility plan (IFRP) payments. Respondent filed the supplemental response and two supporting declarations on November 16, 2020. [ECF Nos. 36, 37, 39.] The Court now recommends that the remaining claim be denied and that the petition therefore be denied in its entirety.

**I.　　Background**

Jones is presently incarcerated at the Federal Correctional Institution in Sandstone,

Minnesota (FCI-Sandstone), serving an aggregated 102-month sentence imposed in January 2019. (Pet. at 1; Kensy 1st Decl. ¶ 30 [ECF No. 19] & Ex. E at 2–3 [ECF No. 19-5].) He filed his petition for writ of habeas corpus on June 10, 2020. His IFRP claim was not raised in his initial petition, but he later amended his petition to add it. (*See* Pet'r's Request to Add Claims [ECF No. 6 ].)[1] Jones asserts the allegedly erroneous calculation caused him to be placed on "Financial Responsibility Refuse Status" and restricted from programming. (*Id.* at 4–5.) He challenges the IFRP payment as inconsistent with the judgment entered in his criminal case and as violative of due process. Respondent argued summarily in his first response to the Petition that IFRP claims are outside the scope of federal habeas relief. (Resp't's Resp. at 20 [ECF No. 17].)

A.  **The November 2 R&R**

In the Court's R&R of November 2, 2020, the Court disagreed with Respondent's summary position, noting that habeas relief extends to the execution of a sentence, and thus, in limited circumstances, a federal inmate may "challenge the fashion in which prison officials calculate and impose [IFRP payments], when it can be shown that those calculations are inconsistent with an express command of the sentencing judge, by arguing that the prison's actions constitute an improper execution of that sentence." (R&R at 12 (quoting *Solomon v. United States*, No. 3:15-cv-1323, 2015 WL 10935743, at

---

[1] Respondent did not oppose Jones' request to amend his Petition [*see* ECF No. 11], and the Court granted Jones leave to amend and advised the parties it would consider Jones' filings at ECF Nos. 6 and 7 to be supplements to the Petition (Order at 1–2 [ECF No. 12].)

*3 (M.D. Pa. Nov. 9, 2015), *R&R adopted*, 2016 WL 3001169 (M.D. Pa. May 25, 2016), *aff'd*, 680 F. App'x 123, 2017 WL 679684 (3d Cir. 2017); and citing *Matheny v. Morrison*, 307 F.3d 709, 711–12 (8th Cir. 2002) (finding that habeas petitioners' challenges to the IFRP payment schedule concerned the execution of their sentences and were therefore correctly brought as § 2241 claims); *Fontanez v. O'Brien*, 807 F.3d 84, 87 (4th Cir. 2015) (holding "that an inmate's challenge to the BOP's administration of the IFRP is a challenge to the 'execution' of a sentence that is cognizable under 28 U.S.C. § 2241").)

The Court noted in the R&R that Jones had identified language in the criminal judgment requiring him to pay restitution in regular monthly installments in the amount of 10% of his gross income: "Special instructions regarding the payment of criminal monetary penalties: The defendant pay restitution in regular monthly installments in the amount of 10% of his gross income . . . ." (Pet'r's Request to Add Claims Ex. 3 at 2 [ECF No. 7-2].) The schedule of payments page of the criminal judgment further states: "Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment." (*Id.*)

Jones claims he is being required to pay $100 per month, which is inconsistent with his sentence. (*Id.* at 4 & Ex. 3 at 4 [ECF No. 7-2].) In response to Jones' written inquiry to prison staff on April 17, 2020, a staff member wrote that Jones' "restitution payment amount is determined the same as your assessment. Any [percentages] you pay will be done during supervised release." (Pet'r's Ex. 2 at 6 [ECF No. 7-1].) The

3

following month, a prison staff member informed Jones that his payment amount had been reviewed in February 2020, and his monthly payments of $100 were "commensurate" with his six-month deposit amount of $2,495. (Pet'r's Ex. 2 at 4.)

Based on Jones' submissions and exhibits, the Court believed there could be a discrepancy between the amount of court-ordered restitution and the amount of the monthly IFRP payments determined by the prison. (R&R at 13.) Because Respondent did not address the substance of the claim in his initial response, the Court ordered Respondent to file a supplemental response. (*Id.*) The Court also ordered Respondent to address whether the claim has been exhausted. (*Id.*)

### B. Respondent's Supplemental Response

Respondent did not provide additional evidence or argument in support of its position that the exhaustion requirement should not be waived. (Resp't's Supp'l Resp. at 7 [ECF No. 36].) The Court therefore will consider the exhaustion requirement waived.

With respect to the calculation of Jones' IFRP payments, Respondent argues that the BOP "has an independent statutory basis to collect an IFRP payment, regardless of the sentencing court's payment schedule." (*Id.* at 9.) Respondent submits that the IFRP is completely voluntary and that an inmate may decline to participate. (*Id.* at 3.) Respondent further argues that the BOP reasonably determined the amount of Jones' IFRP payments based on his financial ability to pay. (*Id.* at 11.)

Heather Kensy, a Unit Manager at FCI Sandstone, submitted a declaration in support of the supplemental response. (Kensy 3d Decl. ¶ 1 [ECF No. 37].) The criminal judgment is attached as Exhibit A to the declaration [ECF 37-2]. The criminal monetary

4

penalties section directs Jones to pay $600 as an assessment and $199,698.35 in restitution. (Kensy 3d Decl. Ex. A at 7.) The assessment was "due immediately"; the restitution was not. (*Id.*) The attached schedule of payments contains the following "[s]pecial instructions regarding the payment of criminal monetary penalties": "The defendant pay restitution in regular monthly installments in the amount of 10% of his gross income (i.e. total income from all sources before deductions, exemptions or other tax deductions)." (*Id.* at 9.) The schedule of payments then provides: "Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court." (*Id.*) The sentencing court ordered Jones to pay restitution jointly and severally with his co-defendant, and any payments were to be applied first to the assessment and then to the restitution principal. (*Id.*)

With respect to the 10% restitution payment ordered by the sentencing court, Kensy avers that, in her experience, "if a court intends for the Bureau to follow a set payment plan, it will state something to the effect, 'during incarceration, [defendant] will pay [set percentage] of their prison wages' or 'during incarceration, [defendant] will pay [amount] per [time period].'" (Kensy 3d Decl. ¶ 19 (brackets in original).) Kensy further states the sentencing court "was silent regarding when the established payment schedule commenced." (*Id.* ¶ 20.) The Unit Team has interpreted the criminal judgment's reference to "payments made through the Federal Bureau of Prisons' Inmate Financial

5

Responsibility Program" as a grant of authority to the BOP to set the restitution payments. (*Id.*)

The BOP is tasked with assisting inmates in meeting their financial obligations. (Kensy Decl. ¶ 4.) To that end, prison staff assists each inmate in developing a financial plan and schedules regular reviews of the inmate's efforts and financial ability to pay. (*Id.* & Ex. B at 1 (Program Statement 5380.08) [ECF No. 37-2].) Program Statement 5380.08 provides that the Unit Team will review all available documentation, including the criminal judgment in developing a financial plan with the inmate. (*Id.* at 4.) All restitution payments are "processed through the SENTRY IFRP module." (*Id.* at 5.) When a criminal judgment "has a specific payment plan outlined, payments are to be collected according to the direction provided in the order." (*Id.* at 7.)

Program Statement 5380.08 also contains a formula for determining and reviewing an inmate's financial plan, and any funds that remaining in the inmate's prison accounts after the formula is applied "may be considered for IFRP payments . . . . The Unit Team has the discretion to consider all monies above that computation to adjust the inmate's IFRP payment plan." (*Id.*) Furthermore, "[t]he Unit Manager is the determining authority when it comes to deciding whether an inmate's IFRP payments are commensurate with his/her ability to pay. This decision is solely at the discretion of the Unit Manager and is to be decided on a case-by-case basis." (*Id.* at 7–8.)

The financial responsibility program is voluntary. (Kensy 3d Decl. ¶ 8.) An inmate who refuses to participate in the program or abide by his financial plan, however, is placed in "refuse" status and subject to a number of harsh consequences. (*Id.* at 10–

12.)

When Jones arrived at FCI Sandstone, he agreed to a financial plan that included financial obligation payments of $25 per quarter. (Kensy 3d Decl. Ex. C [ECF No. 37-3].) Substantial deposits were made to Jones' commissary account during his first six months of his incarceration, and Jones agreed to increase his IFRP payments to $100 a month beginning in October 2019. (Kensy 3d Decl. ¶ 11 & Ex. D [ECF No. 37-4].) Jones paid $100 in the months of October through April 2020. (Kensy 3d Decl. ¶ 12 & Ex. E [ECF No. 37-5].) He paid only $62.04 in May 2020, however, and has not made any IFRP payments since then. (Kensy 3d Decl. ¶ 12 & Ex. E.) He was placed in "refuse" status in June 2020. (Kensy 3d Decl. ¶ 14 & Ex. G [ECF No. 37-7].)

## II.    Discussion

"The writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A prisoner may challenge the execution of his sentence through a § 2241 petition filed in the district where he is incarcerated. *Matheny v. Morrison*, 307 F.3d 709, 711 (8th Cir. 2002)). An inmate's challenges to "the IFRP's payment schedule concern the execution of sentence, and are therefore correctly framed as § 2241 claims." *Id.* at 711–12.

### A.    The Authority to Establish Restitution Payments

Federal district courts are required by statute to specify in the restitution order the manner and schedule for paying restitution. 18 U.S.C. § 3664(f)(2); *see United States v. McGlothlin*, 249 F.3d 783, 784–85 (8th Cir. 2001) ("[T]he district court needed to

7

fashion a payment schedule that designated a specific percentage of McGlothlin's monthly earnings while incarcerated toward his restitution obligation.").[2] Sentencing courts have the discretion to order a single payment, partial payments made at certain intervals, or in-kind payments. 18 U.S.C. § 3664(f)(3)(A).

The BOP "encourages each sentenced inmate to meet his or her legitimate financial obligations." 28 C.F.R. § 545.10. Those obligations may include a fine, an assessment, and/or restitution. *McGee v. Martinez*, 627 F.3d 933, 936 (3d Cir. 2010). The purpose of the IFRP is to ensure compliance with the criminal judgment: "namely, the timely payment of whatever sum the court has ordered him to pay." *Id.* Through the IFRP, the BOP is carrying out, "executing" in other words, the criminal monetary penalties of the inmate's sentence.[3] *Id.*

---

[2] The issue in *McGlothlin* was whether the sentencing court was required to establish a restitution payment schedule for the period of incarceration. 249 F.3d at 784. The Eighth Circuit held it was, pursuant to 18 U.S.C. § 3664(f)(2). *Id.* McGlothlin also argued the sentencing court impermissibly delegated to the BOP the authority to set the payment schedule. *Id.* at 785. In resolving that issue, the court relied on the Mandatory Victims Restitution Act of 1996 ("MVRA"), which "provides that the manner of payments and 'the length of time over which scheduled payments will be made shall be set by the court.'" *McGlothlin*, 249 F.3d at 785 (quoting 18 U.S.C. § 3572(d)(2)). The Eighth Circuit interpreted that language to require the sentencing court to establish a payment schedule when the defendant is sentenced. *Id.* (citing *United States v. Coates*, 178 F.3d 681, 685 (3d Cir. 1999) (recognizing that federal regulations allow the BOP to determine payment schedules for monetary penalties but finding the plain language of the MVRA vesting authority in the district courts trumps the regulations); *United States v. Mortimer*, 94 F.3d 89, 91 (2d Cir. 1996) (holding that the district court may not leave to the BOP the responsibility of devising an inmate restitution payment schedule pursuant to the IFRP); *United States v. Miller*, 77 F.3d 71, 78 (4th Cir. 1996) (holding that "a district court may not delegate its authority to set the amount and timing of fine payments to the Bureau of Prisons or the probation officer").

[3] The issue in *McGee* was whether the inmate should seek redress under § 2241 or through a *Bivens* action. *McGee*, 627 F.3d at 934. McGee objected to the BOP setting a

8

Through his § 2241 petition, Jones challenges the $100 monthly IFRP payment as inconsistent with his sentence, which requires him to make monthly restitution payments in the amount of 10% of his gross income. When Jones refused to pay the $100 IFRP, he was placed in "refuse" status and restricted from programming and denied other privileges.

Respondent argues that the criminal judgment did not clearly establish a restitution schedule or payment plan. The Unit Manager at FCI Sandstone believed, based on experience, that the criminal judgment should have ordered "something to the effect" that Jones must pay during his incarceration a "set percentage" of his "prison wages." (Kensy 3d Decl. ¶ 19.) Respectfully, that is effectively what the sentencing court did. The court ordered Jones to "pay restitution in regular monthly installments in the amount of 10% of his gross income." (Kensy 3d Decl. Ex. A at 9.) Kensy does not acknowledge this directive in the criminal judgment or explain why it was not followed, despite Program Statement 5380.08's clear language that when a "[criminal judgment] has a specific payment plan outlined, payments are to be collected according to the direction provided in the order." (Kensy 3d Decl. Ex. B at 7.)

The criminal judgment also provided that "payment of criminal monetary penalties is due during the period of imprisonment," thereby indicating that the restitution payment schedule was effective while Jones was imprisoned. (*Id.*) The sentencing court was not—as Respondent portrays—"silent about when its payment plan applied." (*See*

---

quarterly IFRP payment of $75 on the ground that his sentence required only $20 per month. *Id.* at 937.

9

Resp't's Supp'l Resp. at 9.)  Nor was it reasonable for the Unit Team to conclude from the terms of the criminal judgment that the sentencing court intended for the BOP to set the payment amount and frequency.

Respondent also contends that the sentencing court "indicated payments were to be made through IFRP," thereby authorizing the BOP to establish the payment amount. (Resp't's Supp'l Resp. at 9.)  The Court disagrees with both Respondent's reading of the criminal judgment and Respondent's assumption of the sentencing court's intention.  The only reference to the IFRP in the criminal judgment is a sentence in the Schedule of Payments:  "All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court."  (Kensy 3d Decl. Ex. A at 9.)  This passing reference to the IFRP neither directs that payments toward criminal monetary penalties must be made through IFRP nor implies that the sentencing court delegated the authority to the BOP to establish the payment amount.  *See Frauendorfer v. Fondren*, No. 08-cv-709 (ADM-AJB), 2009 WL 924531, at *6 (D. Minn. Feb. 11, 2009) (discussing the same sentence and declining to "interpret such language to be an express delegation of payment terms to the BOP"), *R&R adopted in part*, 2009 WL 924528 (D. Minn. Apr. 2, 2009), *aff'd*, 374 F. App'x 676, 2010 WL 1780214 (8th Cir. 2010).

Respondent overlooks *Matheny*, *McGlothlin*, and similar authority, relying instead on an opinion by the Seventh Circuit Court of Appeals, *United States v. Sawyer*, 521 F.3d 792 (7th Cir. 2008).  This reliance is misplaced for two related reasons.  First, the issue in *Sawyer* was whether the sentencing court erred by not including an installment plan for

10

restitution payments in the criminal judgment. *Id.* at 793–94. That is not the issue here. Second, the Seventh Circuit acknowledged in *Sawyer* that its decision was at odds with Eighth Circuit precedent—specifically, *McGlothlin*. *Sawyer*, 521 F.3d at 795. Thus, even if *Sawyer* was not distinguishable on the legal issue presented, its holding is contrary to Eighth Circuit precedent.

Respondent next argues that the BOP has independent statutory authority to set and collect IFRP payments "regardless of the sentencing court's payment schedule." (Resp't's Supp'l Resp. at 9.) The Court agrees the BOP is authorized to set and collect IFRP payments under 28 C.F.R. § 545.10 and Program Statement 5380.08, but only to the extent the payments do not violate the inmate's sentence. The purpose of the IFRP, after all, is to help the inmate comply with the financial obligations imposed by the criminal judgment. The BOP does not have the authority to override the restitution payment terms ordered by the sentencing court.

### B. The IFRP Payments Are Not an Unlawful Execution of Jones' Sentence

Jones claims that the BOP cannot require him to pay more toward his restitution obligation than was ordered by the sentencing court. That is true. The BOP cannot *require* him to pay more than the amount established in the criminal judgment. But the BOP may *ask* him to agree to pay more *voluntarily*. *See United States v. Lemoine*, 546 F.3d 1042, 1048 (9th Cir. 2008) (reasoning that the MVRA places no "limits on the BOP's operation of an independent program, such as the IFRP, that encourages inmates voluntarily to make more generous restitution payments than mandated in their respective

judgments.") That is what the BOP did here, and Jones voluntarily agreed to pay $100 a month in IFRP payments. While the IFRP payments are applied against Jones's obligation to pay court-ordered restitution, they are a separate obligation. As such, the IFRP payments are not an unlawful execution of Jones' sentence.

### C. The Consequences of Refusing to Participate in the IFRP Are Not Unconstitutional

The IFRP is a voluntary program. *Cervantes v. Cruz*, No. 07-cv-4738 (DWF/JJK), 2009 WL 76685, at *3 (D. Minn. Jan. 8, 2009); *Jordan v. Holt*, 488 F. App'x 587, 588 (3d Cir. 2012). Prisoners can agree to participate, or refuse. But refusing to participate carries significant consequences such ineligibility for placement in a community-based program and assignment to work detail outside the facility. (Kensy 3d Decl. Ex. B at 11–12.)

Prisoners "have no constitutional right to receive the benefits or privileges" outlined in Program Statement 5380.08 as consequences for refusing to participate in the IFRP. *Cervantes*, 2009 WL 76685, at *5 (citing *Sandin v. Conner*, 515 U.S. 472, 487 (1995); *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)); *see Jordan*, 488 F. App'x at 588 ("The consequences of choosing not to participate in the IFRP do not amount to constitutional violations."); *Lemoine*, 546 F.3d at 1046 (finding the consequences "reasonably related to the legitimate penological interest of rehabilitation" and "not so severe as to impose an 'atypical and significant hardship'"). Here, Jones was advised of the consequences of refusing to participate in the IFRP. To the extent he raises a due process challenge, he was given adequate notice of the consequences. *See Cervantes*,

2009 WL 76685, at *5. In addition, the consequences for refusing to participate in the IFRP are not entitled to due process protection. *Id.*; *Jordan*, 488 F. App'x at 588; *Lemoine*, 546 F.3d at 1049. Therefore, Jones' challenge to the constitutionality of the IFRP payments fails.

Based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Petitioner Jeremy Jones' Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 [ECF No. 1] be **DENIED** as to the IFRP claim, and therefore **DENIED** in its entirety.

Dated: January 19, 2021          *s/ Hildy Bowbeer*
                                               HILDY BOWBEER
                                               United States Magistrate Judge

## NOTICE

The Court's Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under D. Minn. LR 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).